UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JENNIFER EMOND,

        Plaintiff,

   -v-                                         3:15-cv-1372

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

LACHMAN, GORTON LAW FIRM          PETER A. GORTON, ESQ.
Attorneys for Plaintiff
P.O. Box 89
1500 East Main Street
Endicott, NY 13761

OFFICE OF REGIONAL GENERAL COUNSEL    KAREN T. CALLAHAN, ESQ.
    SOCIAL SECURITY ADMINISTRATION       Special Ass't United States Attorney
    REGION II
Attorneys for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

DAVID N. HURD
United States District Judge

## **MEMORANDUM–DECISION and ORDER**

## I. **INTRODUCTION**

     Plaintiff Jennifer Emond ("Emond" or "plaintiff") brings this action, pursuant to 42

U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant Commissioner of Social

Security's ("Commissioner" or "defendant") final decision denying her applications for

Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). The parties

have filed their briefs as well as the Administrative Record on Appeal and the motions will be considered on the basis of these submissions without oral argument.[1]

## II. BACKGROUND

Emond initially filed an application for Disability Insurance Benefits and Supplemental Security Income alleging that her various physical and mental conditions rendered her disabled beginning on February 8, 2008.

Her claims were initially denied on December 21, 2012. At Emond's request, a video hearing was held before Administrative Law Judge ("ALJ") Robert Gale on May 13, 2014. Plaintiff, represented by counsel, appeared and testified.

On August 26, 2014, the ALJ issued a written decision denying Emond's application for benefits, which became the final decision of the defendant Commissioner of Social Security when the Appeals Council denied her request for review.

## III. DISCUSSION

### A. Standard of Review

A court's review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence and the correct legal standards were applied. Poupore v. Astrue, 566 F.3d 303, 305 (2d Cir. 2009) (per curiam). "Substantial evidence means 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).

---

[1] Pursuant to General Order No. 18 of the Northern District of New York, consideration of this matter will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988) (citing Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951)).  If the Commissioner's disability determination is supported by substantial evidence, that determination is conclusive.  See id.  Indeed, where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's decision must be upheld—even if the court's independent review of the evidence may differ from the Commissioner's.  Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982); Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).

However, "where there is a reasonable basis for doubting whether the Commissioner applied the appropriate legal standards," the decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  Martone v. Apfel, 70 F. Supp. 2d 145, 148 (N.D.N.Y. 1999) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

## B.  Disability Determination—The Five-Step Evaluation Process

The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A). In addition, the Act requires that a claimant's:

> physical or mental impairment or impairments [must be] of such

> severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

Id. § 423(d)(2)(A).

The ALJ must follow a five-step evaluation process in deciding whether an individual is disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ must determine whether the claimant has engaged in substantial gainful activity. A claimant engaged in substantial gainful activity is not disabled, and is therefore not entitled to benefits. Id. §§ 404.1520(b), 416.920(b).

If the claimant has not engaged in substantial gainful activity, then step two requires the ALJ to determine whether the claimant has a severe impairment or combination of impairments which significantly restricts his physical or mental ability to perform basic work activities. Id. §§ 404.1520(c), 416.920(c).

If the claimant is found to suffer from a severe impairment or combination of impairments, then step three requires the ALJ to determine whether, based solely on medical evidence, the impairment or combination of impairments meets or equals an impairment listed in Appendix 1 of the regulations (the "Listings"). Id. §§ 404.1520(d), 416.920(d); see also id. Pt. 404, Subpt. P, App. 1. If the claimant's impairment or combination of impairments meets one or more of the Listings, then the claimant is "presumptively disabled." Martone, 70 F. Supp. 2d at 149 (citing Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984)).

If the claimant is not presumptively disabled, step four requires the ALJ to assess whether—despite the claimant's severe impairment—he has the residual functional capacity

("RFC") to perform his past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). The burden of proof with regard to these first four steps is on the claimant. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citing Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983)).

If it is determined that the claimant cannot perform his past relevant work, the burden shifts to the Commissioner for step five. Perez, 77 F.3d at 46. This step requires the ALJ to examine whether the claimant can do any type of work. 20 C.F.R. §§ 404.1520(g), 416.920(g). The regulations provide that factors such as a claimant's age, physical ability, education, and previous work experience should be evaluated to determine whether a claimant retains the RFC to perform work in any of five categories of jobs: very heavy, heavy, medium, light, and sedentary. Perez, 77 F.3d at 46 (citing 20 C.F.R. § 404, Subpt. P, App. 2). "[T]he Commissioner need only show that there is work in the national economy that the claimant can do; [she] need not provide additional evidence of the claimant's residual functional capacity." Poupore, 566 F.3d at 306 (citing 20 C.F.R. § 404.1560(c)(2)).

### C. Emond's Appeal

Emond contends the ALJ improperly weighed the medical evidence and, as a result, incorrectly concluded she could meet the mental and physical demands of her past relevant work as a process auditor.

### 1. Mental Demands

"The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." SSR 85-15. Because "mental illness is defined and

characterized by maladaptive behavior, it is not unusual that the mentally impaired have difficulty accommodating to the demands of work and work-like settings." Id. Accordingly, the Regulations "emphasize the importance of thoroughness in evaluation on an individualized basis." Id.

Emond contends that the opinion of her treating counselor, Licensed Master Social Worker Erin Marean, establishes that she suffers "marked" limitations in her ability to meet the basic mental demands of work, including her ability to work at a consistent pace, to concentrate, and to interact appropriately with others. Plaintiff argues these findings are consistent with the opinion of consulting psychologist Cheryl Loomis, Ph.D. According to plaintiff, the ALJ improperly discounted these opinions by relying only on E. Kamin, M.D., a non-treating, non-examining agency review physician.

Generally speaking, ALJs determine how much weight to afford a medical source's opinions by considering: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) what evidence supports the opinion or report; (4) how consistent the opinion is with the record as a whole; (5) the area of specialization of the source in contrast to the condition being treated; and (6) any other factors which may be significant in a claimant's particular case. In so doing, an ALJ need not mechanically recite the criteria as long as the record reflects a proper application of the substance of the rules. See, e.g., Petrie v. Astrue, 412 F. App'x 401, 407 (2d Cir. 2011) (summary order).

In this case, the ALJ did not err in his evaluation of this evidence. As the ALJ initially recognized, Social Security Ruling 06-03p directs that although the opinions of social workers like Ms. Marean are not entitled to controlling weight, these "other sources" must still be

considered using the same general criteria set forth above.  Saxon v. Astrue, 781 F. Supp. 2d 92, 103-04 (N.D.N.Y. 2011).  And as the ALJ also recognized, in appropriate cases evidence from a source like Ms. Marean may even outweigh the opinion of a claimant's treating provider.  Id.

The ALJ then considered this criteria when evaluating Ms. Marean's opinions.  For instance, the ALJ noted that although Emond alleged a disability onset date of early 2008, she had only begun treating with Ms. Marean relatively recently in early 2012.  Further, the ALJ noted a contrast between the "moderate" limitations originally assessed by Ms. Marean in June 2012, R. at 382, and the "marked" limitations noted two years later in March 2014.  R. at 440.  Among other things, the ALJ noted that this later assessment does not explain the reason for these increasingly restrictive findings.

As the ALJ also observed, the value of this more restrictive assessment from 2014 is further undercut by the fact that Emond actually testified to receiving increasingly less-frequent treatment from Ms. Marean over this same period, dialing back from weekly visits with in 2012 to twice-monthly meetings over time.  R. at 50-51.  As the ALJ noted, Ms. Marean's characterization of plaintiff's mental state as having declined in this same period is undermined by this reduction in treatment frequency as well as by a series of stable progress notes covering roughly the same span of time.

Importantly, these stable progress notes are authored by Ian Stuppel, D.O.  Although he is scarcely mentioned in Emond's brief, Dr. Stuppel has been her primary care provider throughout the entire alleged disability period and is the medical source who has been most actively involved in prescribing, monitoring, and adjusting plaintiff's various mental health medications.  R. at 350-56, 415-39.  The ALJ was entitled to consider the significance of

plaintiff's extensive treatment relationship with Dr. Stuppel when evaluating Ms. Marean's conclusions.

The ALJ also properly evaluated Dr. Loomis's November 2012 opinion. As the ALJ explained, Dr. Loomis's opinion was rendered after only a one-time consultative examination. And as the ALJ noted, Dr. Loomis's conclusions that Emond was completely unable to "maintain attention and concentration," "relate adequately with others," or "appropriately deal with stress" seem at odds with her own examination findings, which note only *mild* impairment in those and similar areas. R. at 398-400. In any event, however, "[t]here is no requirement that the agency accept the opinion of a consultative examiner concerning a claimant's limitations." Pellam v. Astrue, 508 F. App'x 87, 89-90 (2d Cir. 2013) (summary order). And that remains true even if, as plaintiff insists here, the limitations noted by Dr. Loomis are supported by an other source like Ms. Marean.

Finally, Emond challenges the ALJ's reliance on Dr. Kamin's opinion, asserting he is the *only* medical opinion of record who even "arguably" undermines the opinions of Dr. Loomis or Ms. Marean. As a general matter, an ALJ is entitled to rely on the opinion of a non-examining medical consultant like Dr. Kamin, since such sources are deemed to be qualified experts in the field of social security disability. See Lewis v. Colvin, 122 F. Supp. 3d 1, 7 (N.D.N.Y. 2015). Nevertheless, courts have found reversible error in cases where an ALJ afforded "great weight" to a consultant's opinion when it was based on a record lacking the opinion of one or more treating providers. See id. at 8.

That is not the case here. Although he assigned "more" evidentiary weight to Dr. Kamin than to Dr. Loomis, it bears noting the ALJ's decision did not simply adopt in full Dr. Kamin's assessments. In fact, the ALJ separately noted that subsequent progress notes

authored by Dr. Stuppel, Emond's primary care provider, "consistently" reflected that plaintiff's mental health was "within normal limits" through August 2013. R. at 23.

In sum, a claimant's RFC is an assessment of "what an individual can still do despite his or her limitations." Pardee v. Astrue, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009). "Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole." Matta v. Astrue, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).

The ALJ did that here, considering the record evidence from Dr. Kamin, Dr. Loomis, and Ms. Marean as well as according "significant evidentiary weight" to Emond's primary care provider, Dr. Stuppel, as part of his overall determination that "[t]he tenor of evidence supports a conclusion that the claimant retains the ability to complete many simple tasks and can perform them without extra supervision or assistance at a consistent pace without an unreasonable number and length of rest periods, or without undue interruptions or distractions." R. at 24.

### 2. Physical Demands

Emond contends she cannot meet the physical demands of light work set out in Social Security Ruling 83-14. According to plaintiff, she is unable to "occasionally stoop," cannot lift twenty pounds, and is unable to frequently lift or carry objects weighing up to ten pounds.

"A disability claimant bears the burden of proving that she cannot return to her past relevant work, either as it is performed in the national economy, or as she actually performed it." Wells v. Colvin, 87 F. Supp. 3d 421, 436 (W.D.N.Y. 2015). This step of the sequential evaluation requires a careful appraisal of (1) the individual's statement as to which past work

requirements can no longer be met and the reason(s) for her inability to meet those requirements; (2) medical evidence establishing how the impairment limits the ability to meet the physical and mental requirements of the work; and (3) in some cases, supplementary or corroborative information from other sources on the requirements of the work as it is generally performed in the economy. SSR 82-62.

In this case, the ALJ determined Emond could perform her past relevant work as a process auditor both generally and as she *actually* performed it. Notably, the Regulations make clear that "[t]he claimant is the primary source for vocational documentation, and statements by the claimant regarding past work are generally sufficient for determining the skill level, exertional demands and nonexertional demands of such work." SSR 82-62.

As the ALJ explained, Emond testified that she performed this data entry job as a process auditor on a full-time basis for approximately five years. R. at 40-41. Plaintiff's self-reported work history form indicates that this job did not require her to perform *any* stooping, and that the heaviest weight she was ever required to lift was fewer than ten pounds. R. at 236.

In light of plaintiff's own testimony and self-reported information from her work history form, plaintiff has failed to establish she is unable to meet the mental or physical demands of her past relevant work as she actually performed it.

## IV. **CONCLUSION**

The ALJ applied the appropriate legal standards and supported his decision with substantial evidence in the record.

Therefore, it is

ORDERED that

1. Emond's motion for judgment on the pleadings is DENIED;

2. The Commissioner's motion for judgment on the pleadings is GRANTED;

3. The Commissioner's decision is AFFIRMED; and

4. Emond's complaint is DISMISSED.

The Clerk of the Court is directed to close the file.

IT IS SO ORDERED.

*[Signature]*
United States District Judge

Dated: March 23, 2017
       Utica, New York.